**ATCHISON, T. & S. F. RY. CO. v. STATE on Inf. of THOMPSON.**

No. 8162—Opinion Filed April 29, 1919.

(180 Pac. 849.)

(Syllabus.)

### Commerce—Railroads—Order of Corporation Commission.

Record examined and held: (1) That the issuance of the supplemental instructions pertaining to order No. 367, without notice, etc., was not fatal to the jurisdiction of the commission in the proceeding for contempt; (2) that the evidence adduced at the trial and incorporated in the record on appeal is not sufficient to support the order issued by the commission in the contempt proceeding; (3) that the issuance of order No. 367 was a proper exercise of the power vested in the Corporation Commission by the Constitution and laws of the state, and was not violative of any federal statute regulating interstate commerce.

Appeal from State Corporation Commission.

Contempt proceedings by the State of Oklahoma, on information of A. I. Thompson, against the Atchison, Topeka & Santa Fe Railway Company for violation of an order of the Corporation Commission. From an order assessing a fine against defendant, it appeals. Reversed. and cause remanded, with directions to grant a new trial.

J. R. Cottingham and S. W. Hayes, for appellant.

S. P. Freeling, John B. Harrison, and Paul A. Walker, for appellee.

KANE, J. This is an appeal from order No. 928 of the Corporation Commission, assessing a fine against the appellant for the violation of commission order No. 367. The complaint against the appellant charges:

"That said company, has violated commission's order No. 367, in that it has failed to compile reports, and certify to same, covering 'Road,' 'Equipment,' and 'General Expenditures,' as of December 31, 1910, in compliance with the commission's order No. 367 and instructions pertaining thereto."

It seems that order No. 367 was issued by the commission in an effort to comply with that part of section 29, article 9, of Williams' Constitution which provides that:

"The commission shall ascertain, and enter of record, the same to be public record, as early as practicable, the amount of money expended in construction and equipment per mile of every railroad and other public service corporation in Oklahoma, the amount of money expended to procure the right of way, and the amount of money it would require to reconstruct the road bed, track, depots, and transportation facilities, * * * belonging to the railroad or other public service corporation.".

Neither the Constitution itself nor the statutes of the state, nor the commission by rule have provided any procedure for the guidance of the commission in securing the information required by the Constitution, but as no exception is taken to order No. 367 itself upon this ground, we will assume that the commission adopted the correct practice.

Section 2 of order No. 367 as originally issued requires the railway companies to report to the Corporation Commission, under oath, the original cost of construction, the amounts expended for permanent additions and betterments, the language being, in substance, the same as the constitutional mandate, which is directed to the commission, hereinbefore set out. And another part of the same section provides that wherever the original cost cannot be accurately identified with any primary account named in such classification of expenditures, estimates for each such primary account may be made on a formula to be prescribed by the company making the report, and said formula or formulae shall be made a part of the report of the Corporation Commission. Original actual cost of right of way and station grounds shall be shown in such reports.

What was done by the railway companies toward complying with the order as thus promulgated does not clearly appear, but after it had been in force for several years the commission issued what it called, its "Supplemental Instructions Pertaining to Order No. 367," which required the railway companies to give certain detailed information in the form of reports from which the commission assumed it would be enabled to gather the information required by the Constitution. The instructions of the Corporation Commission thus issued were very elaborate, covering some 36 pages, and among the general subheads under which the required information was to be tabulated by the companies were the subjects "Roads," "Equipment," "General Expenditures," and it was for failure to file reports covering these subjects that the appellant is charged with contempt.

Whilst counsel for the appellant have presented for review a great many formal assignments of error, in view of the conclusion we have reached, it will be necessary to

notice but two grounds for reversal, which may be summarized as follows:

(1) Said order No. 367, as modified by instructions issued by the Corporation Commission pertaining thereto, is void, because said instructions were issued without notice to this appellant, or to any other corporations affected thereby.

(2) The finding of fact and judgment or order of the commission, fining appellant for violation of order No. 367 of the commission, and instructions pertaining thereto, were unsupported by the evidence, and are contrary to the evidence and to the law.

The law undoubtedly is, as contended by counsel for the appellant, that before a railway company can be penalized in the maximum sum for contempt of an order of the commission, it must appear that the order was issued upon due notice and after the carriers affected thereby have had an opportunity to be heard. The order issued in the case at bar, however, does not seem to be clearly violative of this rule. Original order No. 367 was issued upon notice, etc., but, being couched in general language, the companies claimed it was too indefinite to inform their officers as to just what was expected of them.

The record discloses a willingness on the part of the railway companies to comply with the order, if its meaning was made clear to them, and the subsequent explanatory instructions seem to have been issued in pursuance of some previous understanding with the appellant railway company, as the letter of transmittal states:

"As per hearing before the Corporation Commission on the 11th day of May, 1915, and as per understanding, the commission has this day instructed their engineer to address a letter to your company relative to the proper method pursued to best comply with the Corporation Commission's order No. 367, relative to the original cost of properties of the Atchison, Texas & Santa Fe Railway Company, in the state of Oklahoma."

It was also stated in the opinion of the commission, and not denied, that:

"It was understood at the hearing and before the commission that the Atchison, Texas & Santa Fe Railway Company would furnish supplementary reports to the commission, made on the commission's blank forms Nos. 10 and 11, covering the following sections, to wit."

Then follows instructions in detail as to particular subjects upon which the commission required information.

We think, in these circumstances, the fact that no formal notice was given the appellant before the explanatory letter was issued is not fatal to the jurisdiction of the Corporation Commission. The appellant always expressed a willingness to comply with order No. 367, but asserted that it was unable to understand what was required of it on account of the generality of its language. After the issuance of the explanatory letter the company seems to have been satisfied on that score, and even now contends that it has given the information required, or at least has attempted to do so in good faith. In these circumstances we are unable to see how appellant has been deprived of any substantial right by the failure of the Corporation Commission to give notice of the issuance of the explanatory matter.

On the next proposition we have examined the record before us very carefully, and are unable to find any evidence supporting the charge that the railway company violated order No. 367 and in the instructions pertaining thereto, as alleged in the complaint and found by the Commission.

The record discloses that after complaint was filed counsel for the appellant appeared, and, notwithstanding their objection to the jurisdiction of the commission, made the following statement:

"I will say, Mr. Commissioner, that we have uniformly endeavored to comply with the commission's requests in these matters, and that we expect to do it at all times. In this connection, to go just as far as we can, we think, with any degree of reason and justice to observe the wishes of the commission, at the same time putting the matter in such form as to protect our views as to what should be considered, we are perfectly willing to do anything that is within the bounds of reason to accommodate the commission, whether it is within the jurisdiction to require it or not, or whether we are subject to contempt proceedings for failing to do it. We have not tried to measure what we do by strict liability under the order, or for liability for fear to do it under the contempt proceedings, and I want to say, as common courtesy to the commission, it has not measured it on that basis either."

In response to this one of the commissioners stated:

"Now, suppose we get to work trying to amend these reports so as to show real, actual cost, as Commissioner Henshaw said, for the time being eliminating these theoretical propositions, which Mr. Bledsoe has just presented."

After this colloquy Mr. A. I. Thompson, engineer for the Corporation Commission,

was called to the stand, and asked the following question:

"You take your records there one at a time, and go through and explain how the records are made and how, in your judgment it should be made, if the records are available, etc.; then we will let the other parties give their explanation."

The reports from which Mr. Thompson testified were not offered in evidence, and are not in the record before us, and of course we are unable to say what they contain.

The opinion of the commissioner states that the report filed by the defendant does not show the amount of the original cost of engineering, either actual or estimated, etc.

We are unable to say from the evidence before us that this charge is supported by the evidence. There is some contention in the brief of the Attorney General to the effect that, inasmuch as the Corporation Commission had the reports from which its engineer was testifying before it, and undoubtedly took notice of their contents in making its order, it becomes the duty of this court on appeal to take notice of the contents of the reports, notwithstanding their omission from the record. We think this is asking too much of the court. The Corporation Commission did not take judicial notice of the contents of these reports in the sense that this term is generally used, but got whatever information it had by an inspection of the reports themselves, as a part of the records and files of that department. If the court is to have the advantage of an inspection of the reports it will be necessary for it to either order the reports brought into court for inspection, or to examine them in their proper depository with the Corporation Commission. None of the authorities cited by the Attorney General, as supporting his contention that the appellate court must take judicial notice of any matter of which judicial notice was taken by the trial court, seem to require this of us. Without these reports we are wholly unable to say from the record before us that the appellant has violated order No. 367 as charged.

We agree with the contention of the Attorney General, and the appellant takes no exception to this view, that the commission has authority to require the railway companies, by order, to supply it with the information required by section 29 of the Constitution.

The particular part of the constitutional mandate with which we are now concerned is the part which requires the commission to ascertain the amount of money expended in the original construction and equipment per mile of every railroad in the state, for the purpose of making the same a public record. As this fact, under the general rule, must be established by the best evidence available, the first source of inquiry naturally would be the railways themselves.

The Corporation Commission, realizing the difficulty of securing precise information on some of the subjects involved, made provision for this contingency in order No. 367 by providing that wherever the original cost canont be accurately identified by any primary account in such classification of expenditures and estimates, each such primary account may be made on forms to be presented by the company making such reports, and such forms shall be made a part of the report of the Corporation Commission. In our judgment the promulgation of order No. 367 was a reasonable and just method for securing the information desired.

Whilst, as we have said, the most natural way of obtaining this information would be to ask the railway companies themselves for it, as the Corporation Commission did, still the commission is not confined to this source of information, as section 29 itself provides that:

"For the purpose in this section named the commission may employ experts to assist them when needed."

The Attorney General in his brief says:

"What the Corporation Commission wants to know, and what section 29 of article 9 of the Constitution required it to ascertain, and what said order No. 367 required the Santa Fe to furnish, was what it cost to construct the road, and what it cost to equip the road; that is the original cost of construction and the original cost of equipment."

We think the Corporation Commission was entitled to this information, and was well within its jurisdiction in issung order No. 367, and that it was the duty of the appellant to furnish the precise information desired where possible, and to furnish estimates where precise information is impracticable. We are unable, however, to agree with the Attorney General that "an examination of the testimony of Mr. A. I. Thompson discloses that not a single report made by the Santa Fe complied with the order of the commission and the instructions pertaining thereto."

For the reasons stated, we think it was

error for the Corporation Commission to overrule the appellant's motion for a new trial.

In view of the conclusion we have reached it is perhaps necessary to notice briefly another contention, which, although not specifically argued by counsel for appellant in their original brief, is saved by an assignment of error and argued at considerable length in a reply brief. This assignment of error is as follows:

"Said order No. 978 of the Corporation Commission is unreasonable, unjust, and invalid for the reason that the Corporation Commission has no jurisdiction of the subject-matter of this proceeding as set out in said complaint and citation, for the reason that the duty and obligation of making and ascertaining the valuation of this defendant's railroad property in the state of Oklahoma, in each and every particular, has been lodged in the Interstate Commerce Commission of the United States by the Congress of the United States, which jurisdiction of the subject-matter is exclusive."

This contention seems to us to be wholly untenable. Section 29, supra, of the Constitution requires the Corporation Commission to ascertain the original cost of the railroads in the state for some purpose connected with its proper regulatory power over these corporations as carriers of intrastate commerce. We cannot conceive how it can be said with any show of reason that the federal acts relied on by appellant were intended to cover this field, or that they in any way interfere with the right of the commission to require the railways to furnish the information required by proper order.

For the reasons stated, the order of the Corporation Commission is reversed, and the cause remanded, with directions to grant a new trial.

All the Justices concur, except HARRISON, J., not participating.